T.C. Memo. 2012-344

UNITED STATES TAX COURT

KARL E. CROSS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6009-09.                    Filed December 13, 2012.

Mitchell Stuart Fuerst and Joseph A. DiRuzzo III, for petitioner.

Brian E. Derdowski, Jr., and Carroll De Groff Lansdell, for respondent.

MEMORANDUM OPINION

JACOBS, Judge:  This matter is before the Court on petitioner's motion to

dismiss for lack of jurisdiction (petitioner's motion) pursuant to Rule 53.[1]  The

_____

[1]Petitioner's motion is premised on the principles set forth in Scar v.
Commissioner, 814 F.2d 1363 (9th Cir. 1987), rev'g 81 T.C. 855 (1983).

[*2] issue to be decided concerns the validity of the notice of deficiency and whether respondent "determined" a deficiency in petitioner's 2004 Federal income tax within the meaning of section 6212(a).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

<u>Background</u>

Petitioner resided in Florida at the time he filed his petition. On February 19, 2009, respondent mailed separate copies of a notice of deficiency to petitioner and his wife, Melissa.[2] The notice consisted of different documents, including a transmittal letter, Letter 531-T, which stated:

---

[2]Mrs. Cross received a copy of the notice of deficiency because the 2004 Federal income tax return was filed as a joint return. Mrs. Cross filed a petition on April 20, 2009 (docket No. 9480-09). In her petition Mrs. Cross asserted, inter alia, that she was an innocent spouse under sec. 6015. Mr. Cross intervened as a nonrequesting spouse pursuant to sec. 6015(e)(4) and Rule 325. The caption of docket No. 9480-09 was changed to include Mr. Cross as intervenor.

On August 22, 2011, Mrs. Cross and respondent filed a joint motion to dismiss intervenor and to change caption. Mrs. Cross asserted, and respondent agreed, that she had not signed the purported joint return, nor had she authorized Mr. Cross to sign the return on her behalf. Consequently, Mrs. Cross agreed with respondent that she was not entitled to relief under sec. 6015. We granted the joint motion to dismiss intervenor and change caption. The Court of Appeals for the Eleventh Circuit affirmed our order dismissing Mr. Cross as an intervenor. <u>Cross v. Commissioner</u>, No. 11-15309 (11th Cir. Nov. 27, 2012).

## [*3] NOTICE OF DEFICIENCY

We have determined that you owe additional tax or other amounts, or both, for the tax year(s) identified above. This letter is your NOTICE OF DEFICIENCY, as required by law. The enclosed statement shows how we figured the deficiency.

Letter 531-T informed the reader that the notice of deficiency related to the tax year ended December 31, 2004, and that for that year respondent had determined a deficiency of $3,034,424, an addition to tax pursuant to section 6651(a)(1) of $716,551.25, and a penalty pursuant to section 6662A (the accuracy related penalty on understatements with respect to reportable transactions) of $875,663.04.

One document, Form 4549, Income Tax Examination Changes, detailed the adjustments made to petitioner's income tax return. Form 4549 recalculated petitioner's income, his expenses reported on Schedule C, Profit or Loss From Business, deductions, exemptions, and child tax credits. Lines 1.a., 1.b., and 1.c. of Form 4549 referred to three Schedules C. One Schedule C claimed a deduction of $1,081,188 in "other expenses"; another Schedule C claimed a deduction of $202,387 in "other expenses"; and a third claimed $4,870,990 in "other expenses". With all "other expenses" combined, respondent increased petitioner's income by $6,154,565 as a consequence of disallowing the claimed deduction of "other

[*4] expenses".[3]  Line 1.d. of Form 4549 refers to a $2,185,083 adjustment to

petitioner's income arising from "419 Income".

Another document, Form 886-A, Explanation of Items, listed several checks

written by petitioner, to wit:

Amounts paid during the 2003 calendar year

| Check No. | Bank | Date | Amount | Payee | Memo Sect. |
|---|---|---|---|---|---|
| 120 | First Union National Bank | 3-13-03 | $200,000 | Benistar 419 Plan & Trust | --- |
| 236 | First Union National Bank | 10-14-03 | 330,000 | Benistar 419 Plan & Trust | 2003 contribution |

Amounts paid during the 2004 calendar year

| Check No. | Bank | Date | Amount | Payee | Memo Sect. |
|---|---|---|---|---|---|
| 0094 | Eagle National Bank | 5-28-04 | $131,200 | Benistar 419 Plan & Trust | 2003 contribution 26969 |

---

[3]Petitioner noted that 10 Schedules C were a part of his 2004 return, but the notice of deficiency lists only three.  As will be discussed infra, respondent conducted his examination of petitioner's return by reviewing the RTVUE transcript of the income tax return, not the return itself.  The Internal Revenue Service employee who input petitioner's information into the RTVUE transcript apparently combined the data from eight Schedules C into a single Schedule C, the one claiming a deduction of $4,870,990 as other expenses.

The RTVUE transcript is the computerized record of line items from Form 1040, U.S. Individual Income Tax Return, Form 1040A, U.S. Individual Income Tax Return, and Form 1040EZ, Income Tax Return for Single and Joint Filers with No Dependents, and their accompanying schedules.  The RTVUE is created as tax returns are processed at the various Internal Revenue Service Centers.  See Whittington v. Commissioner, T.C. Memo. 1999-279, n.3.

| [*5] 454 | Wachovia | 11-15-04 | 750 | Benistar 419 Plan | Acct 21388 annual admin fee 750 |
|---|---|---|---|---|---|
| 0098 | Eagle National Bank | 12-29-04 | 1,523,133 | Benistar 419 Plan & Trust | 2003 contribution final see Mr. Neumann |

The Form 886-A also listed the three Schedules C referred to on Form 4549. The Form 886-A then offered the following explanation with respect to respondent's determinations:

I.     Schedule C deductions disallowed

A.     The deductions claimed on each Schedule C for "Other Expenses" are disallowed because the taxpayer [sic] has not substantiated that these deductions relate to payment of ordinary and necessary expenses incurred by the respective trade or business reported on the Schedule C.

B.     To the extent that any portion of the disallowed deductions relate to amounts paid in connection with participation in the Benistar 419 Plan or another arrangement purported to be a welfare benefit fund, such deductions are disallowed because the taxpayer [sic] has not substantiated that the arrangement was a welfare benefit fund and that such amounts are deductible consistent with the rules provided under I.R.C. §§ 419 and 419A.

II.     Assets invested through the Benistar 419 Plan, paid for the benefit of the taxpayers, are includible in income

A.     The business referred to as LTC Staffing Services, LLC, made payments to the Benistar 419 Plan as summarized above. The taxpayers have not substantiated that the Benistar 419 Plan is a welfare benefit plan, or that it is anything other than a means for the owners of closely held businesses to invest in cash value life insurance policies through a trust. The taxpayers have not

**[*6]**  shown that their interest(s) in the assets held for their benefit in the Benistar 419 Plan are contingent or subject to a substantial risk of forfeiture.  The taxpayers have not shown that benefits were provided through the Benistar 419 Plan to persons other than the taxpayers.  Accordingly, the assets invested through the Benistar 419 Plan are includible in income under I.R.C. § 61, 72, 83 and 402(b)(1), and 402(b)(4).  The taxpayers have not cooperated with the income tax examination, and as a result, the best information available as to the value of the assets held for the taxpayers' benefit in the trust associated with the Benistar 419 Plan, or their vested accrued interest therein, are the payments summarized above.

The Form 886-A discussed violations of section 402(b)(2) by the Benistar 419 Plan, as well as how the value of assets invested through the plan is includible in income under section 1.61-22, Income Tax Regs.  It further discussed the additions to tax and penalties respondent determined.  The remainder of the form reviewed respondent's recalculation of petitioner's Federal income tax liability resulting from his determinations, as well as his computation of interest.  Finally, the notice of deficiency included a form entitled "How To Pay Your Taxes" that could be used should petitioner agree with the results of the examination.

Petitioner did not agree with the results of the examination.  On March 11, 2009, petitioner filed his petition with this Court, and a trial was scheduled for January 11, 2010.  The parties jointly moved to continue the scheduled trial, and the motion was granted.  The trial was rescheduled for May 17, 2010.  On March

**[*7]** 19, 2010, petitioner and respondent filed (1) another joint motion to continue and (2) a stipulation to be bound.

In the joint motion for continuance, the parties stated:

5.    Since the previous continuance motion was filed, the parties have commenced review of the case by respondent's Appeals Office. Additionally, the parties have discussed the issues in this case, and have focused first on the Benistar 419 Plan issue. The parties are filing a Stipulation to Be Bound, contemporaneously with this motion, which resolves issues relating to the Benistar 419 Plan.

6.    The Stipulation to Be Bound will allow for resolution of the adjustments determined by the notice of deficiency that relate to the Benistar Plan, by reference to the case of Mark and Barbara Curcio, docket number 1768-07, et al. * * *.

7.    Remaining income tax issues include possible participation in the SADI Plan, an arrangement described as a 10-or-more-employer welfare benefit plan (a different plan than the Benistar 419 Plan), and other deductions.

The stipulation to be bound stated that respondent's adjustments to income, as calculated on Form 4549, would be redetermined in the same manner as adjustments to income would be determined by the highest court resolving each of any of four test cases involving the "Benistar 419 Advantage Plan" or "Benistar 419 Plan". The four test cases in question were Curcio v. Commissioner, docket No. 1768-07, Jelling v. Commissioner, docket No. 1769-07, Smith v. Commissioner, docket No. 14822-07, and Mogelefsky v.

**[*8]** <u>Commissioner</u>, docket No. 14917-07. The stipulation to be bound also stated that the applicability of the section 6662A penalty would be determined by reference to the determination of the highest court resolving either of two penalty test cases. The two penalty test cases were <u>McGehee Family Clinic v. Commissioner,</u> docket No. 15646-08, and <u>Prosser v. Commissioner</u>, docket No. 15647-08. Both the joint motion for continuance and the stipulation to be bound were signed by petitioner's counsel, Mitchell S. Fuerst, on March 17, 2010.

We agreed to further continue trial in this matter on two other occasions on the basis of parties' representation that settlement negotiations were ongoing and a continuance would save the parties and the Court significant time in the presentation of unresolved issues.[4]

The interaction between petitioner and respondent deteriorated after the case was continued, and on July 25, 2011, Mr. Fuerst filed petitioner's motion. In his motion, petitioner, through counsel, asserted:

> This Motion is based upon the principals [sic] set forth by <u>Scar v. Comm'r</u>, 814 F.2d 1363 (9th Cir. 1987), <u>Bell Atlantic v. Twombly</u>, 550 U.S. 554 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). As will be demonstrated below, Respondent has failed to abide by the principles enunciated in the abovementioned cases and has

---

[4]As of this time Mrs. Cross' case continued to be intertwined with petitioner's case and it was represented that resolution of her case would be assisted by a continuance of his case.

[*9] attempted to conceal this failure through obfuscation and a false presentation of the issues that should not be before this honorable Court. This conduct has persisted from the commencement of the examination of Petitioner's joint income tax return, through the inception of this proceeding, through today.

In his motion, petitioner, through counsel, alleged that respondent failed to conduct an examination of his 2004 tax return, with the result that (1) respondent disallowed alleged deductions regarding contributions to the Benistar 419 plan even though respondent was aware that petitioner had participated in, and made payments in 2003 to, the SADI plan, not the Benistar 419 plan; (2) respondent imposed a section 6651(a) addition to tax for petitioner's failure to timely file his return even though he qualified for an extension of time to file as a result of hurricane damage, as described in Publication 4492, Information for Taxpayers Affected by Hurricanes Katrina, Rita, and Wilma; and (3) respondent ignored rules that deem contributions to an employee benefit plan to have been made on the last day of the preceding taxable year if the payment for that year is made no later than the time prescribed by law for filing that year's return (including extensions thereof). Petitioner's counsel further asserted that despite being well aware that petitioner did not participate in the Benistar 419 plan, respondent "drafted and lured Counsel for Petitioner into a 'Stipulation to be Bound' where Petitioner agreed to be bound by * * * any of a list of cases all involving tax consequences

[**\*10**] stemming from participation in Benistar". Further, petitioner's counsel alleged that "after counsel for Petitioner finally discovered the truth", i.e., that petitioner did not participate in the Benistar 419 plan, respondent acknowledged that "he knew all along" that petitioner had not participated in the Benistar 419 plan, but that respondent "has since expressed the idea that it was unnecessary for him to replead his case because the Statutory Notice [of deficiency] provided language that contemplated disallowing a deduction for a contribution to SADI."

A hearing with respect to petitioner's motion was held on October 17, 2011. At the hearing, it emerged that the notice of deficiency and petitioner's 2004 Federal income tax return were not in the record. Respondent was directed to provide copies of both of these documents.

Petitioner's counsel and respondent continued to correspond. During their discussions, it emerged that instead of examining petitioner's 2004 Federal income tax return, respondent had reviewed the RTVUE transcript of petitioner's Federal income tax return. A copy of the RTVUE transcript used in the examination was sent to Mr. Fuerst on December 6, 2011, but it appears the transcript was lost in the mail. Respondent mailed a second copy of the RTVUE transcript, along with copies of an AMDISA transcript, an IMFOLT transcript, a Form 2848, Power of Attorney and Declaration of Representative, signed by petitioner and Mr. Fuerst,

**[*11]** as well as other documents, to petitioner's counsel on December 15, 2011.

The copy of the RTVUE transcript mailed to Mr. Fuerst was printed on November 29, 2007. On January 17, 2012, Mr. Fuerst filed Petitioner's Supplemental Motion to Dismiss for the United States Tax Court's Lack of Jurisdiction (supplemental motion). In the supplemental motion Mr. Fuerst asserts that respondent's reliance upon the RTVUE transcript in his examination invalidates the notice of deficiency.

## Discussion

This Court is a court of limited jurisdiction and may exercise that jurisdiction only to the extent authorized by Congress. Sec. 7442; Naftel v. Commissioner, 85 T.C. 527, 529 (1985). We have jurisdiction to redetermine a taxpayer's Federal tax liabilities in a deficiency proceeding where the Commissioner has issued a valid notice of deficiency and the taxpayer has timely filed a petition. Secs. 6212 and 6213; Rule 13(a), (c); Gustafson v. Commissioner, 97 T.C. 85, 89 (1991). If no valid notice of deficiency was issued, we are compelled to dismiss the case. Monge v. Commissioner, 93 T.C. 22, 27 (1989).

It is well settled that no particular form is required for the notice of deficiency to be valid. See Benzvi v. Commissioner, 787 F.2d 1541, 1542 (11th Cir. 1986); Jarvis v. Commissioner, 78 T.C. 646, 655 (1982). The Court of Appeals for the Eleventh Circuit, the court to which this case is appealable barring

**[*12]** a stipulation to the contrary, has held that the notice will be treated as valid if the Commissioner demonstrates that "'the IRS has determined that a deficiency exists for a particular year and specif[ies] the amount of the deficiency.'" Stoecklin v. Commissioner, 865 F.2d 1221, 1224 (11th Cir. 1989) (quoting Benzvi v. Commissioner, 787 F.2d at 1542), aff'g T.C. Memo. 1987-453.

Petitioner, through counsel, makes two main arguments. First, he cites Scar v. Commissioner, 814 F.2d 1363 (9th Cir. 1987), rev'g 81 T.C. 855 (1983), and its progeny in support of his contention that the subject notice of deficiency is invalid. Second, he asserts that a notice of deficiency is a civil complaint against petitioner, and in the instant case the complaint failed to meet the pleading requirements of the Federal Rules of Civil Procedure.

I.      The Validity of the Notice of Deficiency Under Scar v. Commissioner

In Scar, the notice of deficiency sent to the taxpayers was factually incorrect. The notice indicated that the Commissioner was disallowing a deduction for losses in a partnership called the Nevada Mining Project, in which the taxpayers had no interest or involvement whatsoever. See Scar v. Commissioner, 865 F.2d at 1365. The notice also stated that the Commissioner had not actually examined the taxpayers' income tax return. See id. Finally,

**[*13]** in calculating the taxpayers' tax liability, the Commissioner simply applied the top marginal rate of the time (i.e., 70%), instead of using the progressive tax rates prescribed in the Code.  Id.

The Court of Appeals for the Ninth Circuit held that the notice of deficiency sent to the Scars was invalid.  The court indicated that the determination requirement of section 6212(a) has substantive content.  Id. at 1369.  The Court of Appeals stated "that the Commissioner must consider information that relates to a particular taxpayer before it can be said that the Commissioner has 'determined' a 'deficiency' in respect to that taxpayer.  To hold otherwise would entail ignoring or judicially rewriting the plain language of the Internal Revenue Code."  Id. at 1368-1369.  The Court of Appeals in Scar found no "determination" had been made by the Commissioner because "the Commissioner's purported notice of deficiency revealed on its face that no determination of tax deficiency had been made".  Id. at 1370.

In Clapp v. Commissioner, 875 F.2d 1396 (9th Cir. 1989), the Court of Appeals clarified its holding in Scar, stating:  "Scar * * * [does not] require any affirmative showing by the Commissioner that a determination set forth in an alleged notice of deficiency was made on the basis of the taxpayers' returns.  Only where the notice of deficiency reveals on its face that the Commissioner failed to

**[\*14]** make a determination is the Commissioner required to prove that he did in fact make a determination." Id. at 1402. In Kong v. Commissioner, T.C. Memo. 1990-480, we stated: "Thus, the Court of Appeals for the Ninth Circuit has stated the general rule that where the notice of deficiency reveals on its face that the Commissioner failed to make a determination, respondent is entitled to prove that he did in fact make a determination."

In the motion to dismiss, petitioner's counsel posits that the principles set forth in Scar are applicable in this case for several reasons: respondent ignored "a plethora of information" that supported petitioner's position; respondent "falsely asserted that Petitioner participated in Benistar when in fact he knows that Petitioner participated in SADI"; the checks written to the Benistar 419 Plan in 2004 were, in fact, payments relating to petitioner's 2003 tax year; and the notice of deficiency's blanket disallowance of all Schedule C business expense deductions indicates that respondent failed to consider this information in relation to petitioner's return. In the supplemental motion petitioner's counsel asserts that respondent's reliance on the RTVUE transcript during the examination invalidates the notice of deficiency because the content of the RTVUE transcript provides no

[*15] support for the notice of deficiency.[5]  Specifically, petitioner's counsel asserts that Schedule C, Part V, Other Expenses, provides a detailed accounting regarding what expenses the claimed Line 27, Other Expenses consists of (e.g., amortization, bank fees, education expenses, etc.).  By disallowing these expenses in toto, rather than reviewing each expense in detail, petitioner's counsel asserts respondent could not have made a determination.  Consequently, according to petitioner's counsel, (1) the notice of deficiency is invalid on its face, (2) the Court lacks jurisdiction, and (3) the petition must be dismissed.

We disagree with the position taken by petitioner's counsel.  His arguments in both the motion to dismiss and the supplemental motion are arguments as to the correctness of respondent's determinations in the notice of deficiency, not the validity of the notice of deficiency.  Consequently, these arguments do not support the position he takes because our jurisdiction in this matter does not hinge on the correctness (or incorrectness) of respondent's determinations in the notice of deficiency.  As the Court of Appeals for the Ninth Circuit stated in Scar:

---

[5]In the supplemental motion petitioner's counsel maintains that respondent could not have credibly relied on the RTVUE transcript because it was not printed until April 6, 2009, well after the notice of deficiency was mailed on March 23, 2009.  However, respondent demonstrated to the Court's satisfaction that, in fact, the RTVUE transcript had been printed on November 29, 2007.  It appears the confusion arose because of the complicated nature of the transcripts respondent used in conducting his examination of petitioner's tax return.

**[*16]** It is, of course true, as the dissent points out, that Tax Court jurisdiction does not depend on the existence of an actual deficiency. * * * It is the purpose of the Tax Court to determine whether the Commissioner's determination is correct. * * * "'[I]t is not the <u>existence</u> of a deficiency but the Commissioner's <u>determination</u> of a deficiency that provides a predicate for Tax Court jurisdiction.'"

<u>Scar v. Commissioner</u>, 814 F.2d at 1370 n. 10 (citations omitted) . Unlike <u>Scar</u>, in this case respondent clearly determined that there was a deficiency. On Form 886-A of the notice of deficiency, respondent specifically lists checks written by petitioner's company to the Benistar 419 Plan & Trust (or to the Benistar 419 Plan) in 2004. We are satisfied that, unlike <u>Scar</u>, in this case there is at least some link between petitioner and the Benistar 419 Plan. <u>See</u> <u>Bokum v. Commissioner</u>, 992 F.2d 1136, 1139 (11th Cir. 1993) (distinguishing <u>Scar</u>), <u>aff'g</u> T.C. Memo. 1990-21. Indeed, during the hearing with respect to petitioner's motion, petitioner's counsel, Mr. Fuerst, admitted that petitioner was the signatory on the checks.

It is noteworthy that the notice of deficiency refers specifically to the other expense deductions petitioner claimed on line 27 of Schedule C of his Federal income tax return, and the amounts respondent disallowed match exactly the amounts petitioner claimed. We are satisfied that respondent's agent, at a minimum, reviewed the RTVUE transcript and saw the "Other Expense"

**[*17]** deductions petitioner claimed. Petitioner does not dispute that the amounts appearing on the RTVUE transcript are the same as the amounts appearing on his 2004 income tax return. And we have previously held that the use of an RTVUE transcript in circumstances similar to these does not invalidate a notice of deficiency. See Whittington v. Commissioner, T.C. Memo. 1999-279.

Scar applies only in the narrowest of circumstances, specifically where the notice of deficiency on its face reveals that the Commissioner failed to make a determination. See Campbell v. Commissioner, 90 T.C. 110, 112-113 (1988). The facts in this matter are readily distinguishable from those in Scar. In this matter, the notice of deficiency specifically addresses petitioner's income tax return. Unlike the notice in Scar, here the notice of deficiency does not state that the income tax is being determined at the maximum rate simply to protect the Government's interest. It does not refer to a tax shelter with which petitioner had no relationship. Nor does the notice of deficiency indicate that petitioner's tax return (or the transcript thereof) was never examined. In sum, we cannot say that the notice of deficiency reveals on its face that respondent failed to determine a deficiency.

**[\*18]** II.    <u>Application of the Federal Rules of Civil Procedure to Notices of Deficiency</u>

Petitioner's counsel asserts that the notice of deficiency is equivalent to a civil complaint/pleading and that it fails the pleading requirements of rule 8 of the Federal Rules of Civil Procedure (involving a plaintiff's claim for relief). Petitioner's counsel cites no authority, and we are aware of none, which characterizes a notice of deficiency as a civil complaint/pleading governed by the Federal Rules of Civil Procedure.[6] Nor does counsel cite any authority applying the Federal Rules of Civil Procedure to a notice of deficiency. The validity of the notice of deficiency is governed by a statute enacted by Congress, i.e., section 6212, not by the pleading rules of the Federal Rules of Civil Procedure. And our jurisdiction, governed by a statute enacted by Congress, i.e., section 6213(a), arises from the issuance of a valid notice of deficiency. It has been said that notices of deficiency are "tickets to the Tax Court". <u>See</u> <u>Laing v. United States</u>, 423 U.S. 161, 206 (1976).

---

[6]In <u>Bokum v. Commissioner</u>, T.C. Memo. 1990-21, <u>aff'd</u>, 992 F.2d 1136 (11th Cir. 1993), we noted that because a notice of deficiency does not result in final liability on the part of taxpayers, the issuance of a notice of deficiency is analogous to the filing of a civil complaint. However, our analogy was that the notice of deficiency is the document which initiates a case in the Tax Court, not that the pleading rules of the Federal Rules of Civil Procedure apply to the notice of deficiency.

[*19] III.     Conclusion

The notice of deficiency demonstrates on its face that respondent determined a deficiency for petitioner's 2004 tax year, and it states the amount of the deficiency so determined.  We thus hold that we have jurisdiction to redetermine petitioner's 2004 Federal tax liability.  Consequently, we will deny petitioner's motion as supplemented.[7]

An appropriate order will

be issued.

---

[7]As noted supra pp. 6-8, petitioner's attorney, Mr. Fuerst, signed a stipulation to be bound with respect to several issues in this case.  The test cases have since been resolved in favor of the Commissioner.  See, e.g., McGehee Family Clinic v. Commissioner, T.C. Memo. 2010-202; Curcio v. Commissioner,  T.C. Memo. 2010-115, aff'd, 689 F.3d 217 (2d Cir. 2012).  In the motion to dismiss, Mr. Fuerst makes numerous allegations including that he was misled into signing that stipulation to be bound and he was unaware that petitioner was not involved in the Benistar 419 plan at that time.

Mr. Fuerst is a longtime member of the Tax Court bar, is an experienced attorney, and was formerly an attorney in the Commissioner's Office of Chief Counsel.  We are skeptical that he could be induced to consent to such an important agreement by respondent's counsel without any supporting materials to justify its signing.  But we need not make a determination with respect to Mr. Fuerst's allegations.  Even if true, they would not affect our analysis regarding the validity of the notice of deficiency.